**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| IN RE: | § | (CHAPTER 11) |
| | § | |
| DUNE ENERGY, INC. | § | CASE NUMBER 15-10336 |
| DUNE OPERATING COMPANY | § | CASE NUMBER 15-10337 |
| DUNE PROPERTIES, INC. | § | CASE NUMBER 15-10338 |
| | § | |
| DEBTORS. | § | (JOINT ADMINISTRATION |
| | § | REQUESTED) |

**DEBTORS' EMERGENCY MOTION FOR AN ORDER UNDER 11 U.S.C.**
**§§ 105(A) AND 363(C) AUTHORIZING THE DEBTORS**
**TO (I) CONTINUE THEIR INSURANCE POLICIES AND BOND**
**OBLIGATIONS AND (II) PAY INSURANCE PREMIUMS, BOND**
**PAYMENTS AND FINANCING PAYMENTS THEREON**

Dune Energy, Inc. ("Dune Energy"), Dune Operating Company ("Dune Operating"), and Dune Properties, Inc. ("Dune Properties"), debtors-in-possession in the above-referenced chapter 11 cases (collectively, the "Debtors"), file this *Debtors' Emergency Motion for an Order Under 11 U.S.C. §§ 105(a) and 363(c) Authorizing the Debtors to (I) Continue Their Insurance Policies and Bond Obligations and (II) Pay Insurance Premiums, Bond Payments and Financing Payments Thereon* (the "Motion") and in support thereof, respectfully represent as follows:

**Jurisdiction and Venue**

1.       This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

**Background**

2.       Dune Energy is an independent energy company that was formed in 1998 and operates through two wholly owned subsidiaries, Dune Operating and Dune Properties.  Since May 2004, the Debtors have been engaged in the exploration, development, acquisition and

exploitation of crude oil and natural gas properties in Texas and Louisiana. The Debtors' interests in their oil and gas properties are held by Dune Properties, and their oil and gas operations are conducted by Dune Operating. The Debtors sell their oil and gas production primarily to domestic pipelines and refineries. The Debtors' oil and gas properties cover over 74,000 gross acres across 15 producing oil and natural gas fields.

3.      As of September 30, 2014, the Debtors had outstanding obligations in the principal amount of approximately $37 million of borrowings and $2 million of letters of credit under the Amended and Restated Credit Agreement, dated as of December 22, 2011 (as amended, the "First Lien Credit Agreement") among Dune Energy, as borrower, Bank of Montreal ("BMO"), as administrative agent, CIT Capital Securities LLC, as syndication agent, and the lenders party thereto (the "First Lien Lenders"). The Debtors also had outstanding obligations in the principal amount of approximately $67.8 million under the Floating Rate Senior Secured Notes due 2016 (the "Senior Notes"). The Debtors have granted liens on substantially all of their assets as security for their obligations under the First Lien Credit Agreement and the Senior Notes. The lien and security interests granted to secure the First Lien Credit Agreement are senior to those granted to secure the Senior Notes.

4.      The Debtors have experienced liquidity constraints due in part to borrowing base reductions under the First Lien Credit Agreement, and in August 2014, the Debtors were in default under the First Lien Credit Agreement due to the failure to meet certain covenant ratios in the First Lien Credit Agreement. As a consequence, the Debtors and the First Lien Agent entered into a number of amendments and forbearance agreements with respect to the First Lien Credit Agreement.

5.      To address the Debtors' liquidity constraints and obtain additional working capital to further develop their oil and gas properties, Dune Energy entered into an Agreement and Plan of Merger dated September 17, 2014 (the "Merger Agreement") with Eos Petro, Inc. ("Eos") and Eos Petro Sub, Inc.  On March 4, 2015, the Merger Agreement was terminated because Eos failed to close the tender offer and consummate the merger with Dune Energy.  Eos is obligated to Dune Energy for approximately $5.5 million (the "Merger Termination Fee") for their failure to perform under the Merger Agreement.  On March 4, 2015 Dune Energy made a demand on Eos for the Merger Termination Fee.

6.      To preserve the value of their assets and restructure their financial affairs, on March 8, 2015 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") commencing the above captioned cases (the "Chapter 11 Cases").  The Debtors continue to manage and operate their business as debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

7.      Concurrently with the filing of the Motion, the Debtors have requested procedural consolidation and joint administration of the Chapter 11 Cases.  No request for the appointment of a trustee or examiner has been made in the Chapter 11 Cases, and no committees have been appointed or designated.

8.      A detailed description of the Debtors and their businesses, and the facts and circumstances supporting the Motion and the Debtors' Chapter 11 Cases are set forth in greater detail in the *Declaration of Donald R. Martin, Chief Restructuring Officer of Dune Energy, Inc. and its Subsidiaries in Support of First Day Pleadings*, filed contemporaneously herewith and incorporated herein by reference.

**Insurance Policies**

9.      In connection with the operation of their businesses, the Debtors maintain various insurance policies (each an "<u>Insurance Policy</u>," and collectively the "<u>Insurance Policies</u>") which the Debtors have obtained through third-party insurance providers (collectively, the "<u>Insurance Providers</u>") including, without limitation coverage for general liability, vessels and offshore liability, hull and machinery liability, directors and officers (D&O) liability, employers liability, workers' compensation liability, automobile insurance, and other coverage as set forth on **<u>Exhibit A</u>.**

10.     Although, as of the Petition Date, the Debtors do not owe any premiums directly to Insurance Providers under the Insurance Policies, the Debtors have financed the premiums for the majority of their insurance policies through Upstream Brokers ("<u>Upstream</u>"), as reflected on Exhibit A.

11.     On October 24, 2014, Dune Energy entered into a Premium Finance Agreement (the "<u>First PAC Agreement</u>,") with Premium Assignment Corporation ("<u>PAC</u>") to finance premiums on several of the Debtors' Insurance Policies, including their commercial general liability, excess liability, pollution and hull and machinery policies (the "<u>General Liability Policies</u>").  Dune Energy financed a total of $925,936.10 with PAC under the First PAC Agreement[1] and is obligated to pay PAC $104,133.26 a month (the "<u>First PAC Loan Payment</u>") through July 2014.  As of the Petition Date, the Debtors owe $104,133.26, which was due on March 1, 2015 under the First PAC Agreement.

12.     On or about January 29, 2015, Dune Energy entered into a second Premium Finance Agreement (the "<u>Second PAC Agreement</u>" and together with the First PAC Agreement,

---

[1] The total premiums for these policies were $1,235,553.10.  The Debtors made a down payment of $309,617.00 to PAC as a condition to financing.

the "PAC Agreements") with PAC to finance premiums on several of the Debtors' well-related liability policies (collectively, the "Energy Policies"). Dune Energy financed a total of $1,114,968.00[2] with PAC under the Second PAC Agreement and is obligated to pay PAC $125,366.32 a month (the "Second PAC Loan Payment," and together with the First PAC Loan Payment, the "PAC Loan Payments") through November 2015. As of the Petition Date, the Debtors owe $125,366.32, which was due on March 1, 2015 under the Second PAC Agreement.

13. On June 16, 2014, Dune Energy entered into a Premium Finance Agreement (the "FlatIron Agreement," and together with the PAC Agreements, the "Loan Agreements") with FlatIron Capital ("FlatIron") to finance premiums on the Debtors' D&O liability policies. Dune Energy financed a total of $195,953.68 with FlatIron under the FlatIron Agreement[3] and is obligated to pay FlatIron $20,046.32 a month (the "FlatIron Loan Payment," and together with the PAC Loan Payments, the "Loan Payments") through April 2015. As of the Petition Date, the Debtors are current under the FlatIron PAC Agreement, and the next payment is due on March 15, 2015.

14. Each of the Loan Agreements provides that the applicable finance company has, among other things, a security interest in unearned premiums. Each of the Loan Agreements also grants the applicable finance company an irrevocable power of attorney to cancel the insurance policies financed thereunder in the event that Dune Energy defaults in making the Loan Payments under the applicable Loan Agreements.

---

[2] The total amount for the premiums related to these policies is $1,527,353.42. The Debtors made a down payment of $412,385.42 to PAC as a condition to financing.

[3] The total amount of the premiums for the Debtors' D&O liability policies is $216,000. The Debtors made a down payment of $20,046.32 to FlatIron as a condition to financing.

15.     Finally, the Debtors maintain several stand-alone insurance policies: two workers' compensation policies, an automobile insurance policy, a personal property insurance policy, and a Maritime Employer's Liability policy.  As of the Petition Date, $4,672 is due on the personal property insurance policy, approximately $25,000 is due on the two workers' compensation policies and $3,672 is due on the Maritime Employer's Liability Policy.  The monthly premium payment due for the auto insurance policy has been paid.

### Bond Obligations

16.     In the ordinary course of their businesses, the Debtors are required by local, state, and federal law to provide to certain third parties surety bonds (collectively, the "Bonds") to secure the Debtors' payment or performance of certain obligations (the "Bond Obligations"). The premiums for the Bonds are due at various times throughout the year and expire at various times as reflected in the schedule attached hereto as **Exhibit B**.  All of the Bonds are issued by IndemCo L.P. in varying amounts.  The Debtors believe they are current with respect to all of the premiums due under the Bonds except for their ERISA Compliance bond (as set forth in Exhibit B), and the amount due for such bond is approximately $400.

### Relief Requested

17.     By this Motion, the Debtors respectfully request, pursuant to Sections 105(a) and 363(c) of the Bankruptcy Code and subject to the terms and conditions of the debtor in possession financing agreement and applicable orders authorizing the debtors to enter into the same, the entry of an order authorizing the Debtors (i) to continue to administer the Insurance Programs and renew or obtain new Bonds in the ordinary course of business, (ii) to pay outstanding prepetition Loan Payments and prepetition amounts due under the Insurance Policies and Bonds, and (iii) to continue to pay premiums for the Bonds and Loan Payments in the

ordinary course of business to the extent they may become due and payable on a post-petition basis according to the terms of the Insurance Policies, related insurance premium financing agreements and Bonds.

**Basis for Relief Requested**

18.    Section 105(a) of the Bankruptcy Code provides that the Court may "issue any order, process, or judgment that is necessary or appropriate" to carry out the provisions of the Bankruptcy Code.  11 U.S.C. § 105(a).

19.    Section 363(c) of the Bankruptcy Code provides that:

> If the business of the debtor is authorized to be operated under section...1108... of this title [title 11] and unless the court orders otherwise, the trustee may enter into transactions, including the sale or lease of property of the estate, in the ordinary course of business, without notice or a hearing, and may use property of the estate in the ordinary course of business without notice or a hearing.

11 U.S.C. § 363(c).

20.    It is essential to the Debtors' continued operation and reorganization efforts that the Debtors maintain the Insurance Policies and Bonds on an ongoing and uninterrupted basis. The Insurance Policies provide a comprehensive range of coverage for the Debtors and their properties.  Allowing the Insurance Policies to lapse would expose the Debtors to substantial liability for any damages resulting to persons or property of the Debtors and others, and the Debtors would have to bear the costs and expenses of defense litigation.  Moreover, the United States Trustee for the Western District of Texas will require maintenance of the Insurance Policies.

21.    Additionally, the Bonds are required for the Debtors to continue their operations. Failure to provide, maintain and timely replace these surety bonds could jeopardize the Debtors' ability to conduct their operations.  If any of the Bonds are cancelled, the Debtors' operations

could be severely affected, endangering the Debtors' ability to maximize the value of their estates.

22.    Further, the Debtors must be able to make prepetition and postpetition Loan Payments and Bond premiums in order to avoid termination of the Insurance Policies and cancellation of the Bonds.  While the Debtors have not located applicable law in the Fifth Circuit, the vast majority of courts to consider premium financing agreements with terms substantially similar to the Loan Agreements have determined that the applicable financing company has a valid and enforceable security interest in unearned premiums under a financed insurance policy and is entitled to relief from the automatic stay to exercise its power of attorney and terminate applicable insurance policies if financing payments are not made.  *See, e.g., AICCO, Inc. v. Lisowski (In re Silver State Helicopters, LLC)*, 403 B.R. 849, 863-64 (Bankr. D. Nev. 2009); *In re JII Liquidating, Inc.*, 344 B.R. 875, 888-90 (Bankr. N.D. Ill. 2006); *In re QA3 Fin. Corp.*, No. BK11-80297-TJM, 2011 WL 1297840 at *3 (Bankr. D. Neb. Apr. 5, 2011) (holding that a financing company was entitled to relief from the automatic stay because it had a security interest in unearned premiums, had an irrevocable power of attorney, and was offered no adequate protection from the debtor).

23.    The amounts the Debtors propose to pay for prepetition periods for the Loan Payments and for the Bonds are small when compared with the need to further the rehabilitation effort and the potential exposure of the Debtors to significant claims absent insurance coverage. For all the reasons stated in this Motion, the maintenance of the Insurance Policies, the payment of all premiums due thereunder, all Loan Payments, and the ability to continue and renew the Bonds serve the best interests of the Debtors' estates and creditors, and will be required by the

United States Trustee's guidelines and federal and state law as a condition of operations. Consequently, the Court should approve the relief requested in this Motion.

24.     To the extent the Insurance Policies are executory contracts within the meaning of 11 U.S.C. § 365, the Debtors do not at this time seek authority to assume the contracts.  The Debtors request only authorization to continue the Insurance Policies and make such payments as are necessary to keep the Insurance Policies in force.

25.     Many Texas bankruptcy courts have granted similar relief in other large chapter 11 cases. *See, e.g., In re Spectrum Jungle Labs Corporation*, Case No. 09-50455 (RBK) (Bankr. W.D. Tex. Feb. 5, 2009); *In re Renaissance Hosp. Grand Prairie, Inc.*, Case No. 08-43775 (DML) (Bankr. N.D. Tex. Sept. 4, 2008); *In re Superior Offshore Int'l, Inc.*, Case No. 08-32590 (WWS) (Bankr. S.D. Tex. June 16, 2008); *In re Home Interiors & Gifts, Inc.*, Case No. 08-31961 (BJH) (Bankr. N.D. Tex. June 6, 2008); *In re Bombay Co.*, Case No. 07-44084 (DML) (Bankr. N.D. Tex. Sept. 20, 2007).

### Request for Waiver of Stay

26.     Pursuant to Bankruptcy Rule 6003, the Court may grant relief regarding a motion to pay all or part of a prepetition claim within twenty-one (21) days after the Petition Date if the relief is necessary to avoid immediate and irreparable harm.  Based on the foregoing, the Debtors submit that they have satisfied the requirements of Bankruptcy Rule 6003 to support the Court granting the relief requested herein immediately.

27.     To the extent that any aspect of the relief sought herein constitutes a use of property under Bankruptcy Code section 363(b), the Debtors seek a waiver of the ten-day stay under Bankruptcy Rule 6004(h). As described above, the relief that the Debtors seek in this Motion is immediately necessary in order for the Debtors to be able to continue to operate their

businesses and preserve the value of their estates. Accordingly, the Debtors respectfully request that the Court waive the ten-day stay imposed by Bankruptcy Rule 6004(h), as the exigent nature of the relief sought herein justifies immediate relief.

### Conclusion

**WHEREFORE,** the Debtors respectfully request that the Court (i) grant the Motion, (ii) authorize the Debtors to pay outstanding prepetition amounts due under the Insurance Policies, including, without limitation, the Loan Payments, and the premiums due for the Bonds, (iii) authorize the Debtors to pay premiums under the Insurance Policies and the Bonds in the ordinary course of business post-petition, and (iv) grant such other and further relief as is just and proper.

Dated:  March 8, 2015                      Respectfully submitted,

                                           **HAYNES AND BOONE, LLP**

                                           */s/ Charles A. Beckham, Jr.*
                                           Charles A. Beckham, Jr.
                                           Texas Bar No. 02016600
                                           Kenric D. Kattner
                                           Texas Bar No. 11108400
                                           Kourtney Lyda
                                           Texas Bar No. 24013330
                                           Kelli Stephenson
                                           Texas Bar No. 24070678
                                           1221 McKinney Street, Suite 2100
                                           Houston, Texas 77010
                                           Telephone: (713) 547-2000
                                           Fax: (713) 547-2600
                                           Email:  charles.beckham@haynesboone.com
                                           Email:  kenric.kattner@haynesboone.com

                                           **PROPOSED COUNSEL TO
                                           DEBTORS-IN-POSSESSION**