# EXHIBIT B



1301 McKinney, Suite 2025
Houston, Texas 77010
713.650.0500 | 713.650.0502 FAX
www.ConwayMacKenzie.com

March 29, 2015

**Private & Confidential**
**Via E-mail**

Mr. Paul McKim
Crescent Energy Services, Chair of the Official Committee of Unsecured Creditors
1304 Engineers Road
Belle Chase, LA 70037

    Re:    *Engagement of Conway MacKenzie, Inc. to Provide Professional Services to the Committee of Unsecured Creditors of Dune Energy, Inc. and Affiliated Debtors*

Dear Mr. McKim:

This letter confirms the terms and conditions of the engagement by the Official Committee of Unsecured Creditors (the "Committee") of Dune Energy, Inc., et al. ("Dune", "Debtors" or the "Company") of Conway MacKenzie, Inc. ("CM") to provide professional services in connection with the Committee's efforts to maximize the value and recovery of the claims of unsecured creditors of Dune.

**Scope of Engagement**

Our services will include those within our expertise specifically requested by the Committee or its legal advisors, McKool Smith PC ("McKool Smith")

**Engagement Fees**

Fees for our services will be based upon the actual number of hours incurred at hourly rates discounted approximately fifteen percent from the following:

| | | |
|---|---|---|
| Senior Managing Director | $ 585.00 | $ 695.00 |
| Managing Director | $ 525.00 | $ 585.00 |
| Director | $ 450.00 | $ 525.00 |
| Senior Associate | $ 350.00 | $ 450.00 |

CM will submit invoices to the Debtors on a monthly basis and file interim and final fee applications in accordance with the Court's *Order Establishing Procedures for Monthly and Interim Compensation and Reimbursement of Expenses for Professionals* (docket no. 141) and Sections 330 and 331 of the

ATLANTA | CHICAGO | DALLAS | DAYTON | DETROIT | FRANKFURT | HOUSTON | LONDON | LOS ANGELES | NEW YORK
TURNAROUND & CRISIS MANAGEMENT | TRANSACTION ADVISORY | LITIGATION SUPPORT | VALUATION & FORENSIC ANALYSIS

Mr. Paul McKim
March 29, 2015
Page 2

Bankruptcy Code, 11 U.S.C. § 101, et seq.. Aggregate cumulative fees paid by the Company to CM and McKool Smith shall not exceed the amount allocated to Committee professionals in the DIP budget (Docket No. 162 at pp. 53-54) (the "Committee Allocation"). In the event that that the fees and expenses of McKool Smith and CM together exceed the Committee Allocation, McKool Smith and CM will agree upon an appropriate sharing of the Committee Allocation; provided, however that if no agreement can be reached, the Committee will determine the allocation. Payment of any fees in excess of amounts paid in accordance with the DIP budget as set forth herein will be authorized and made only through separate order of the Bankruptcy Court unless otherwise agreed by the Committee, Debtors and DIP Lender. Bryan M. Gaston, Managing Director, will provide oversight and engagement management with a billing rate of $500 per hour. The Committee agrees to support and facilitate an expedited process to approve our retention. We understand that the Debtors will pay our invoices, upon receipt, subject to applicable bankruptcy law, rules and local orders.

### Access to Records

In order for us to perform our services, it will be necessary for our personnel to have access to certain books, records and reports of the Company, and to have discussions with Company personnel. Accordingly, we understand that the Company has agreed to cooperate with our personnel, and to make available its personnel and fully disclose any books, records and other sources from which data can be obtained and that the books, records and reports of the Company are of reasonable organization and quality.

### Non-Audit

Because of the time and scope limitations implicit in our engagement, the depth of our analysis and verification of data is significantly limited. We understand that we are not being requested to perform an audit nor apply generally accepted auditing standards or procedures. We understand that we are entitled, in general, to rely on the accuracy and validity of the data disclosed to us or supplied to us by employees and representatives of the Company and the Committee. We will not, nor are we under any obligation to update data submitted to us or review any areas unless you specifically request us to do so in writing.

### Confidentiality

It is agreed that all professional services will be performed on a confidential basis. Any information that CM requests of the Company or the Committee will be for the sole purpose of accomplishing the services as described above, and such information shall be used for no other purposes. Such information will be held in confidence and not used, disclosed to others, or in any way used by CM for any purposes other than as specifically provided for by the terms of this engagement letter. CM will restrict dissemination of any information provided or disclosed to us or to our employees and agents who have an actual need to know, and are informed by us of the

Mr. Paul McKim
March 29, 2015
Page 3

---

confidential nature of the information and the obligations herein. All such information shall remain the sole property of the Company and CM shall obtain no right of any kind to any of the information. Upon written notice, CM will promptly return all writings, records, documents and copies containing and/or referencing any of the confidential information.

### Disclosure of Pre-existing Relationships

At the present time, CM knows of no facts or circumstances that would represent a conflict of interest for it with regard to its engagement by the Committee in connection with the aforementioned services.

### Covenant Regarding Hiring of CM Employees

The Company agrees to notify CM if it extends an offer of employment to an employee of CM working on this engagement ("CM engagement employee"). In recognition of the training, time, and other resources CM invests in the development of CM's employees, in the building of relationships between clients and CM employees, the loss of client billable time that is necessitated by the transition of client files from a departing employee to another employee, and the difficulty of placing a monetary value on these investments by CM, the Company further agrees that if it hires any CM engagement employee up to two years subsequent to the date of the final invoice rendered by CM for this engagement, the Company will pay CM a cash fee in the amount $1 million. Such cash fee shall be paid upon the Company's hiring of such CM engagement employee. This agreement does not prohibit the Company from making general solicitations for employment or from soliciting for employment any individuals who have ceased to be employees or agents of CM prior to such solicitation.

### Indemnification

In consideration of our agreement to act on the Committee's behalf in connection with this engagement, the Company agrees to indemnify, hold harmless, and defend CM and certain other entities and persons as set forth on the attached Schedule 1.

### Limitation of Liability

CM and any of its partners, employees, agents, officers, directors, affiliates, subsidiaries, shareholders, successors, heirs or assigns shall not be liable to the Committee, Company or any of its equity holders for any loss or damage except such as is a direct result of CM's gross negligence or willful misconduct. CM will in no case be liable for special, incidental, consequential, punitive or indirect loss or damage, including lost profits or lost savings, whether or not such are foreseeable or CM has been advised of the possibility of such damage. CM's liability, if any, under or in relation to this agreement shall be limited in amount to fees paid to CM by the Company for services rendered.

### Termination

Mr. Paul McKim
March 29, 2015
Page 4

---

Either the Committee or CM may terminate this engagement at any time and for any reason whatsoever provided that, if terminated by either party, all professional fees and expenses due, both billed and unbilled, up through the time and date of termination shall become immediately due and payable, subject to orders of the court and court approval. The confidentiality, covenant regarding hiring of CM employees, indemnification, limitation of liability and dispute resolution provisions of this agreement shall survive termination of CM's engagement by the Committee.

**Dispute Resolution**

In the event of a dispute, each of the parties agrees to submit to binding arbitration exclusively to resolve any and all differences and disputes which may arise between them (and their heirs, successors, assigns, employees, officers, directors, affiliates, subsidiaries, or shareholders) related to this agreement, any other agreement between the parties, or otherwise arising between the parties. Prior to initiating arbitration, the parties shall first meet face-to-face to affect a resolution of the differences. Any differences, which the parties are unable to resolve in said face-to-face meeting, shall be heard and finally settled in Oakland County, Michigan, or in any other location mutually agreed upon by the parties, by binding arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association. Such arbitration shall be initiated in the Southfield, Michigan, office of the American Arbitration Association. Any award entered in any such arbitration shall be final, binding, and may be entered and enforced in any court of competent jurisdiction.

**Governing Law**

This agreement letter shall be governed by and construed in accordance with the laws of the State of Michigan without regard to such state's rules concerning conflict of laws.

**Severability**

If any term, provision or portion of this agreement letter shall be determined to be invalid, void or unenforceable, the remainder of the terms, provisions and portions of this agreement letter shall remain in full force and effect and shall in no way be affected, impaired or invalidated.

**Complete Understanding**

This agreement letter sets forth the entire understanding of the parties concerning the matters contained herein and supersedes all prior agreements, arrangements and communications, whether oral or written, with respect to the matters contained herein.

**Modification**

This agreement letter may not be altered, modified or changed in any manner except by a writing duly executed by the parties hereto.

**Notices**

Mr. Paul McKim
March 29, 2015
Page 5

---

All notices required or permitted to be delivered under this letter agreement shall be sent, if to CM, to the address set forth at the head of this letter, to the attention of Mr. Van E. Conway, and if to the Company, to the address set forth above to the attention of the Company's General Counsel, or to such other name or address as may be given in writing to the other party. All notices under this agreement letter shall be sufficient if delivered by facsimile or overnight mail. Any notice shall be deemed to be given only upon actual receipt.

Mr. Paul McKim
March 29, 2015
Page 6

---

### Acceptance of Terms and Conditions

If you are in agreement with the foregoing terms of our engagement, please sign and date in acknowledgment in the space provided below and return via facsimile and via overnight mail one executed original of this letter. Upon receipt of the executed engagement letter we will commence work immediately.

We appreciate this opportunity to be of assistance to the Committee and look forward to working with you in this important matter.

Very truly yours,

**CONWAY MACKENZIE, INC.**

John T. Young, Jr.

### Above Terms Agreed to and Accepted:

**Official Committee of Unsecured Creditors of Dune Energy, Inc., et al**

By: _____ Date: 4-26-15

Name: Paul McKim

Its: Chairman

Mr. Paul McKim
March 29, 2015
Page 7

## WIRE TRANSFER INSTRUCTIONS
## TO CONWAY MACKENZIE HOUSTON, LLC

**Federal Tax ID: 26-3336358**

**Any Billings Thereafter:**

    Comerica Bank
    188 North Old Woodward
    Birmingham, MI 48009
    ABA Routing #072000096
    (248) 644-2601

    Conway MacKenzie Houston, LLC
    Account # 1852-78840-3

Mr. Paul McKim
March 29, 2015
Page 8

## Schedule I

In the event that Conway MacKenzie, Inc. ("CM") or any of its affiliates, partners, officers, directors, shareholders, agents, employees or controlling persons (collectively, the "Indemnified Persons" and each, an "Indemnified Person") becomes involved in any capacity in any claim, action, proceeding or investigation (collectively, "Actions") brought by or against any person, including equity holders of the Company, in connection with or as a result of either CM's engagement or any matter referred to in this Agreement, the Company periodically will advance to the Indemnified Persons amounts necessary to pay their reasonable out-of-pocket legal and other expenses (including the cost of any investigation and preparation) incurred in connection therewith; provided, however, that if it is finally found (in a non-appealable judgment) by a court of competent jurisdiction that any loss, claim, judgment, damage or liability of an Indemnified Person has resulted primarily from the gross negligence or willful misconduct of such Indemnified Person in performing the services that are the subject of this Agreement, such Indemnified Person shall repay such portion of the advanced amounts that is attributable to expenses incurred in relation to the act or omission of such Indemnified Person that is the subject of such non-appealable judgment. The Company also will indemnify and hold the Indemnified Persons harmless from and against any and all losses, claims, judgments, damages or liabilities to which such Indemnified Person may become subject under any applicable law, or otherwise, that is related to, arising out of, or in connection with either CM's engagement or any matter referred to in this Agreement and without regard to the exclusive or contributory negligence of any Indemnified Person except to the extent that it is finally found (in a non-appealable judgment) that any such loss, claim, damage of liability resulted primarily from the gross negligence or willful misconduct bad faith of the Indemnified Persons in performing the services that are the subject of this Agreement.

Upon receipt by an Indemnified Person of actual notice of an Action against such Indemnified Person with respect to which indemnity may be sought under this Agreement, such Indemnified Person shall promptly notify the Company in writing; provided that failure to so notify the Company shall not relieve the Company from any liability that the Company may have on account of this indemnity or otherwise, except to the extent the Company shall have been materially prejudiced by such failure. The Company shall, if requested by the Indemnified Person, assume the defense of any such Action, including the employment of counsel reasonably satisfactory to the Indemnified Person. An Indemnified Person may retain separate counsel to represent it in the defense of any Action, which shall be at the expense of the Company if (i) the Indemnified Party does not request the Company to assume the defense of any such Action or the Company does not assume the defense of the Action within a reasonable period of time after being requested to assume the defense of the Action, or (ii) the Indemnified Person is advised by counsel in writing that there is an actual or potential conflict in the Company's and the Indemnified Person's respective interests or additional defenses are available to the Indemnified Person, which makes representation by the same counsel inappropriate; provided that in no event shall the Company be obligated to pay expenses for more than one counsel in any one jurisdiction for all Indemnified Persons in connection with any Action.

No Indemnified Person shall have any liability (whether direct or indirect, in contract or tort or otherwise) to the Company or its equity holders or creditors related to, arising out of, or in connection with, advise or services rendered or to be rendered by any Indemnified Person

Mr. Paul McKim
March 29, 2015
Page 9

---

pursuant to this Agreement, the transactions contemplated in this Agreement or any Indemnified Person's actions or inactions in connection with any such advise, services or transactions except to the extent any loss, claim, judgment, damage or liability is finally found (in a non-appealable judgment) by a court of competent jurisdiction to have resulted from the Indemnified Person's gross negligence or willful misconduct.

If for any reason the foregoing indemnification is unavailable to an Indemnified Person or insufficient to hold it harmless, then the Company shall contribute to the amount paid or payable by the Indemnified Person as a result of such loss, claim, damage or liability in such proportion as is appropriate to reflect (i) the relative economic benefits to the Company and its equity holders, on the one hand, and to the Indemnified Persons, on the other hand, of the matters covered by this engagement; or (ii) if the allocation provided by the immediately preceding clause is not permitted by applicable law, not only such relative economic benefits but also the relative fault of the Company, on the one hand, and the Indemnified Persons, on the other hand, with respect to such loss, claim, damage or liability and any other relevant equitable considerations. For purposes of this paragraph, the relative economic benefits to the Indemnified Persons of the matters contemplated in this Agreement, shall be deemed to be the fees paid or to be paid to CM under this Agreement; provided, however, that, to the extent permitted by applicable law, in no event shall the Indemnified Persons be required to contribute an aggregate amount in excess of the aggregate fees actually paid to CM under this Agreement.

The reimbursement, indemnity and contribution obligations of the Company in this Schedule I shall be in addition to any liability which the Company may otherwise have, shall extend upon the same terms and conditions to any affiliate of the Indemnified Persons, and shall be binding upon and inure to the benefit of any successors, heirs and personal representatives of the Company, the Indemnified Persons, any such affiliate and any such person.

The Company shall not be required to indemnify an Indemnified Person for any amount paid or payable by the Indemnified Person in the settlement of any action, proceeding or investigation without the written consent of the Company, which consent shall not be unreasonably withheld. Prior to entering into any agreement or arrangement with respect to, or effecting, any proposed sale, exchange, dividend or other distribution or liquidation of all or a significant portion of its assets in one of a series of transactions or any significant recapitalization or reclassification of its outstanding securities that does not directly or indirectly provide for the assumption of the obligations of the Company set forth in this Schedule I, the Company will notify CM in writing thereof (if not previously so notified) and, if requested by CM, shall arrange in connection therewith alternative means of providing for the obligations of the Company set forth in this Schedule I, including the assumption of such obligations by another party, insurance, surety bonds or the creation of an escrow, in each case in an amount and upon terms and conditions reasonably satisfactory to CM.