**IT IS HEREBY ADJUDGED and DECREED that the below described is SO ORDERED.**

**Dated: September 18, 2015.**

_____
**H. CHRISTOPHER MOTT**
**UNITED STATES BANKRUPTCY JUDGE**
_____

## UNITED STATES BANKRUPTCY COURT
### WESTERN DISTRICT OF TEXAS
### AUSTIN DIVISION

| | | |
|---|---|---|
| IN RE: | § | (CHAPTER 11) |
| | § | |
| DUNE ENERGY, INC. | § | CASE NUMBER 15-10336 |
| DUNE OPERATING COMPANY | § | CASE NUMBER 15-10337 |
| DUNE PROPERTIES, INC. | § | CASE NUMBER 15-10338 |
| | § | |
| DEBTORS. | § | (JOINTLY ADMINISTERED UNDER |
| | § | CASE NUMBER 15-10336) |

**FINDINGS OF FACT AND CONCLUSIONS OF LAW REGARDING
APPROVAL OF DISCLOSURE STATEMENT AND CONFIRMATION
OF THE CHAPTER 11 PLAN OF THE DEBTORS**

On September 17 and 18, 2015, the Court conducted a hearing to consider confirmation of the Chapter 11 Plan of the Debtors (the "Plan") (Docket No. 462) and the adequacy of the Disclosure Statement Under 11 U.S.C. § 1125 in Support of the Chapter 11 Plan of the Debtors (the "Disclosure Statement") (Docket No. 463) filed by Dune Energy, Inc. ("Dune Energy"),

Dune Operating Company ("Dune Operating"), and Dune Properties, Inc. ("Dune Properties"), debtors-in-possession in the above-referenced chapter 11 cases (collectively, the "Debtors").[1]  As referred to herein, the "Plan" shall be the Chapter 11 Plan of the Debtors filed on September17, 2015, attached to the Order Approving Disclosure Statement and Confirming Chapter 11 Plan of the Debtors (the "Confirmation Order") as **Exhibit A**, which incorporates modifications referred to in the record and filed with the Court.  After considering the evidence presented and the arguments of counsel for the Debtors and other parties in interest, the Court makes the following Findings of Fact and Conclusions of Law:

**FINDINGS OF FACT**

**A.**      **Introduction**

1.      On August 20, 2015, the Debtors filed their Disclosure Statement and Plan.  The Plan and Disclosure Statement, along with the other solicitation materials, were provided to creditors and parties-in-interest in compliance with the Solicitation Procedures Order (defined below).  These Findings of Fact and Conclusions of Law are made with respect to the adequacy of the Disclosure Statement and confirmation of the Plan.

**B.**      **Jurisdiction and Venue**

2.      The Court has jurisdiction over this matter under 28 U.S.C. §§ 157 and 1334.  Confirmation of the Plan is a core matter under 28 U.S.C. § 157(b).  Venue is proper in the Court under 28 U.S.C. §§ 1408 and 1409.

**C.**      **The Bankruptcy Cases**

3.      On March 8, 2015 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code, thereby commencing the above-

---

[1] Capitalized terms not defined herein shall have the meaning ascribed to them in the Plan.

captioned chapter 11 cases jointly administered by the Bankruptcy Court under Bankruptcy Case No. 15-10336 (the "Bankruptcy Cases").

4.      No trustee or examiner has been appointed in the Bankruptcy Cases. The Debtors have been operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5.      On March 20, 2015, the United States Trustee (the "U.S. Trustee") appointed the Official Committee of Unsecured Creditors (the "Committee") for the Chapter 11 Cases. The U.S. Trustee appointed the following entities to serve on the Committee: Crescent Energy Services, Zedi US, Inc., and Island Operating Company, Inc.

**D.      The Solicitation Packages and Related Matters**

6.      On August 10, 1015, the Debtors filed a motion for entry of an order, pursuant to sections 105, 1125, 1126, and 1128 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), Rules 2002, 3003, 3017, 3018, 3020, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 3017 and 3018 of the Local Court Rules of the United States Bankruptcy Court for the Western District of Texas (the "Local Bankruptcy Rules"): (i) combining and scheduling the hearings on the Chapter 11 Plan of the Debtors and Disclosure Statement; (ii) establishing a voting record date; (iii) approving solicitation packages and distribution procedures; (iv) approving and establishing procedures for voting on the Chapter 11 Plan of the Debtors; (v) approving forms of notices to non-voting classes under the Chapter 11 Plan of the Debtors; (vi) establishing a voting deadline to accept or reject the Chapter 11 Plan of the Debtors; (vii) approving procedures for vote tabulations; and (viii) granting related relief (the "Solicitation Procedures Motion") (Docket No. 437).  On August 17, 2015, the Court entered an order approving the Solicitation Procedures Motion (the

"Solicitation Procedures Order") (Docket No. 453).  Pursuant to the Solicitation Procedures Order, Prime Clerk, LLC (the "Voting Agent") served creditors entitled to vote on the Plan (except as otherwise provided below for the Class 3.3 Second Lien Notes) a copy of (i) the Notice of Combined Hearing on Plan and Disclosure Statement (the "Combined Hearing Notice"); (ii) ballot instructions (which included a unique electronic authorization identification code for submitting E-Ballots) for voting to accept or reject the Plan; and (iii) a letter of support from the Debtors, while the record holders of the Second Lien Notes received a copy of (i) the Combined Hearing Notice; (ii) the Master Owner Ballot for Class 3.3; (iii) the Beneficial Holder Ballot for Class 3.3; and (iii) a letter of support from the Debtors (collectively, the "Solicitation Packages").

7.       The Solicitation Procedures Order established the deadline to vote to accept or reject the Plan as September 10, 2015 at 4:00 p.m. (Central Time).

8.       The Debtors formulated the Plan in good faith and solicited acceptances thereon pursuant to, and in accordance with, the Solicitation Procedures Order and the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules of this Court. The Plan has been solicited in good faith and the Debtors are entitled to the full protections afforded under 11 U.S.C. § 1125(e).

9.       Prime Clerk filed a certificate of service (the "Certificate of Service") (Docket Nos. 486) evidencing service of the Solicitation Packages on Creditors, Interestholders, and the other parties entitled to service under the Disclosure Statement Order.  The Certificate of Service demonstrates that the Solicitation Packages were mailed to such parties on August 20, 2015.  The Debtors are conclusively determined to have provided all Creditors, Interestholders, and parties-in-interest, whose names and addresses were known to the Debtors, with adequate and sufficient

notice of the foregoing.  The notice provided by the Debtors is adequate under the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and the Local Rules and orders of this Court; and such notice did apprise the parties receiving same of the Plan and information and deadlines in the Disclosure Statement Order.

**E.    Objections to Claims for Voting Purposes**

10.    On August 27, 2015, the Debtors filed the following objections to claim for voting purposes only: Claim 112 filed by Diane Crochet and Paul Breaux, Claims 45 and 298 filed by Margot Koch, Claim 276 filed by Dewey Yesser, and Claim 66 filed by Lemon Creek Oil and Gas Ltd.  (Docket No. 473); Claims 87, 154, 155 and 156 filed by Terrebonne Wireline Services Inc. (Docket No. 474); Claim 38 filed by Performance Wellhead & Frac Components, Inc. (Docket No. 475); Claim 68 filed by Susan Swinson (Docket No. 476); Claim 142 filed by William Schorre Talk, Jr. (Docket No. 477); Claim 256 filed by Traco Production Services, Inc. (Docket No. 478); Claim 267 filed by FBS Properties, Inc. (Docket No 479);; Claim 147 filed by William S. Talk Estate (Docket No. 480); Claim 75 filed by Keith Poole (Docket No. 481); Claim 52 filed by CF&S Tank and Equipment Company (Docket No. 483); and Claim 115 filed by T. Baker Smith LLC (Docket No. 484) (collectively, the "Claim Objections").  No responses or motions for temporary allowance were filed by any of the claimants against whom the Claim Objections were filed, and the Court entered orders granting the Claim Objections (Docket Nos. 510-521).

**F.    Objections to Confirmation of the Plan and Disposition Thereof**

11.    The following formal objections were filed to the Plan: White Marlin Oil and Gas Company, LLC and Trimont Energy (NOW), LLC (Docket No. 494), Louisiana Department of Revenue (Docket No. 495), CF&S Tank & Equipment Co. (Docket No. 497), Galveston County

and Harris County (Docket No. 498), Exterran Energy Solutions, L.P. (Docket No. 499), Brazoria County Tax Office and other Texas taxing entities (Docket No. 500); the Official Committee Of Unsecured Creditors (Docket No. 501); IndemCo, L.P. and U.S. Specialty Insurance Company (Docket No. 502); Enervest Energy, L.P. (Docket No. 522); Chevron USA, Inc. (Docket No. 523); T. Baker Smith LLC (Docket No. 547) and  Traco Production Services, Inc. (Docket No. 548).

12.     Additionally, the Debtors received informal comments to the Plan from: the U.S. Trustee, the United States Department of Justice on behalf of the Coast Guard and the U.S. Environmental Protection Agency, the Securities and Exchange Commission, and U.S. Bank National Association, as Second Lien Trustee on behalf of the Second Lien Noteholders (collectively, the "Informal Comments").

13.     The Debtors negotiated resolutions of the Informal Comments with each of the creditor constituents and certain of the objections, which resolutions were implemented through agreed language in the Confirmation Order, the Plan, and/or the Plan Documents (as defined in the Plan).    Based on the parties' representations on the record at the Combined Hearing, the Court finds that the modifications to the Plan and in the Confirmation Order were not material and/or did not adversely affect the treatment of the Claim of any Creditor or Interestholder who has not accepted in writing the modifications, and therefore, the Plan as modified is deemed accepted by all Creditors and Interestholders who have previously accepted the Plan.

**G.     The Hearing to Consider the Adequacy of the Disclosure Statement and Confirmation of the Plan**

14.     The Court conducted a hearing on September 17 and 18, 2015 at 10:00 a.m. (Central Time) to consider confirmation of the Plan and the adequacy of the Disclosure Statement (the "Combined Hearing").

15.     At the Combined Hearing, the Court found that the Disclosure Statement contains "adequate information" as required by 11 U.S.C. § 1125.

16.     At the Combined Hearing, the Debtors announced additional nonmaterial modifications to the Plan in order to resolve certain objections raised during the Combined Hearing, and those modifications are approved as described herein and in the Plan attached to the Confirmation Order as Exhibit A.

**H.     Release and Exculpation**

17.     The Plan contemplates various releases and exculpations required under the Compromise.  For the Compromise to be viable, the Debtors, the Committee, the First Lien Agent and the First Lien Lenders negotiated various releases and exculpations to resolve fully and finally all issues among the parties.  The releases and exculpation are incorporated in Article 8 of the Plan.

18.     The Debtors' CRO, as well as the Debtors' attorneys, advisors and other professionals have played an integral role in, and have provided a tangible benefit to, the Debtors' restructuring efforts.  These parties have worked diligently (both before and after the Petition Date) in connection with the Debtors' restructuring effort.  The Debtors' CRO, with the assistance of Debtors' attorneys, advisors and other professionals: (a) assisted in efforts to prepare for the Debtors' Chapter 11 Cases, including the marketing and sale of the Debtors' assets; (b) assisted in the efforts to responsibly wind-down the Debtors' business; (c) participated in the negotiation and closing the Trimont Sale and the White Marlin Sale and the marketing of the Debtors' other properties; (d) assisted in the negotiation and completion of the Compromise and the negotiation and formulation of the Disclosure Statement and Plan; and (e) responded to the myriad of issues that arose during the restructuring process and the Bankruptcy Cases.

19.     The DIP Agent, the DIP Lenders, the First Lien Agent and the First Lien Lenders played an active role in the Debtors' restructuring efforts, and contributed a meaningful and critical financial element to these Bankruptcy Cases, including the funding of the Plan pursuant to the Compromise. The First Lien Lenders are funding the Plan from proceeds of their Cash Collateral. Without this financial contribution, there would be no Compromise and it is unlikely that any creditor holding a General Unsecured Claim would receive any meaningful distribution.

20.     The Committee and its members have played an integral role in the Debtors' restructuring efforts, including the negotiation of the Compromise. The efforts of these parties have provided a tangible benefit to the holders of General Unsecured Claims. The exculpation of the Committee and its members under Section 8.2 of the Plan describes the appropriate standard of liability for such parties in the context of a chapter 11 bankruptcy.

21.     The Debtors' Bankruptcy Cases have been difficult and have progressed through the bankruptcy process at a very fast pace. The Professionals have played an integral role in, and have provided a tangible benefit to, the Debtors' bankruptcy efforts, including in the formulation and negotiation of the Compromise and the Plan. The exculpation of the Professionals under Section 8.2 of the Plan describes the appropriate standard of liability for such parties in the context of a chapter 11 bankruptcy.

22.     Each of the parties receiving a release or exculpation under the Plan has participated in these Bankruptcy Cases and the Debtors' restructurings in good faith, and has acted in compliance with all provisions of the Bankruptcy Code, including the negotiation, preparation, and pursuit of confirmation of the Plan, and the negotiation and formulation of the Compromise.

23.     Based on the foregoing and the evidence introduced at the Confirmation Hearing, the Court finds that the releases and exculpations are consensual (as no objections were filed to them after adequate notice), and are reasonable, properly tailored, and fair and necessary in connection with the Debtors' bankruptcy efforts.  The releases and exculpations are an important part of the Compromise, which is a foundation of the Plan.  The releases and exculpations are typical and customary for transactions of this size and scope.  Based on the foregoing, the releases and exculpations are approved.

## I.     Impairment of Claims and Results of Voting on the Plan

24.     The Plan provides for the substantive consolidation of the Debtors for all purposes including for distribution and voting.  The Debtors operated as one economic unit, and creditors did not realize that they were dealing with entities other than "Dune." The affairs of the Debtors are entangled such that consolidation will benefit all creditors.   There are parent and intercorporate guaranties among Debtors.  There is difficulty in segregating and ascertaining individual assets and liabilities.  The Debtors also maintained one integrated cash management system.

25.     Holders of claims in Class 1.1 (Allowed Priority Employee Claims) and Class 1.2 (Allowed Priority Non-Tax Claims) are unimpaired under the Plan.  The claims of priority creditors are treated in accordance with the requirements of the Bankruptcy Code.  Under section 1126(f) of the Bankruptcy Code, holders of claims in these classes are conclusively presumed to have accepted the Plan.

26.     The Plan impairs claims in Class 2 (Allowed Secured Tax Claims), Class 3.1 (Allowed First Lien Lender Claims), Class 3.2 (Allowed Other Secured Claims), Class 3.3 (Allowed Second Lien Loan Claims), and Class 4 (Allowed General Unsecured Claims).

27.     Holders of claims in Class 5 (Allowed Subordinated Claims) are receiving nothing on account of such claims and are conclusively presumed to have rejected the Plan. Accordingly, holders of claims Class 5 (Allowed Subordinated Claims) are not entitled to vote on the Plan.

28.     Holders of interests in Class 6 (Allowed Equity Interests) are receiving nothing on account of such interests under the Plan. Under section 1126(g) of the Bankruptcy Code, holders of equity interests in this Class are conclusively presumed to have rejected the Plan and are not entitled to vote on the Plan.

29.     On September 15, 2015, the Debtors filed their Balloting Report (the "Balloting Report") attached to the *Declaration of James Daloia of Prime Clerk LLC Regarding the Solicitation of Votes and Tabulation of Ballots Cast on the Chapter 11 Plan of the Debtors* (Docket No. 544). The voting results contained in the Balloting Report are incorporated herein by reference, and are adopted by the Court as its findings of fact.

30.     In Class 2 (Allowed Secured Tax Claims), no creditors voted to accept or reject the Plan, and, as such, pursuant to paragraph 22(a) of the Solicitation Procedures Order, such class is deemed to have voted to accept the Plan. In Class 3.1 (Allowed First Lien Lender Claims), 100% in number and amount of voting creditors voted to accept the Plan. In Class 3.2 (Allowed Other Secured Claims), 100% in number and amount of voting creditors voted to accept the Plan. In Class 3.3 (Allowed Second Lien Loan Claims), 82.35% in number and 88.93% in amount of voting creditors voted to accept the Plan. In Class 4 (Allowed General Unsecured Claims), 95.92% in number and 95.76% in amount of voting creditors voted to accept the Plan.

31.     The classification and treatment of claims and interests are described in Articles 2, 3 and 4 of the Plan, and the Plan implementation procedures are described in Article 6 of the Plan.  The foregoing comply with the applicable provisions of the Bankruptcy Code and Bankruptcy Rules, including sections 1122, 1123, and 1129 of the Bankruptcy Code, and are reasonable and appropriate.

32.     The Liquidating Trust Agreement for the Dune Plan Trust filed with the Plan as modified prior to the Combined Hearing, and attached to the Confirmation Order as Exhibit B, complies with the terms of the Plan and is reasonable.

33.     The Plan provides that all Executory Contracts of the Debtors that were not previously assumed or rejected by prior order of the Bankruptcy Court are deemed rejected.  The Debtors' rejection of the Executory Contracts reflects the Debtors' sound business judgment and is reasonable and in the best interests of the estates.

## J.     **The Compromise**

34.     The Plan implements the terms and conditions of a settlement and compromise (the "Compromise") among the Debtors, the First Lien Agent, the First Lien Lenders, and the Committee.   A discussion/explanation of the Compromise is contained in Article VIII of the Disclosure Statement.   The Plan constitutes a motion to compromise controversy under Bankruptcy Rule 9019, and seeks approval of the Compromise as incorporated in the Plan.

35.     The Court has considered the factors for determining whether to approve the settlement embodied in the Compromise.  Those factors include (a) the probability of success in the litigation, with due consideration for the uncertainty in fact and law; (b) the complexity and likely duration of the litigation and the expense attendant to it; (c) the difficulty in collecting any

judgment; and (d) the paramount interests of creditors, with proper deference to their reasonable views of the settlement.

36.     The evidence presented at the Confirmation Hearing in support of the Compromise more than satisfies the applicable evidentiary standard for approval of a compromise in bankruptcy.  The Compromise is a comprehensive resolution of the disputes among the Debtors' major creditor constituents, and fairly resolves all of the relevant claims and issues among those parties.  The terms of the Compromise and the Plan are the result of active arms' length negotiations among the Debtors, the First Lien Agent, the First Lien Lenders, and the Committee.  The Compromise eliminates complex and expensive litigation, and provides the funding necessary under the Plan.  The terms of the Compromise fall well above the lowest point in the range of reasonableness.  In addition, no objections to the Compromise were filed with the Bankruptcy Court.  The settlement embodied in the Compromise is fair and equitable, and in the best interest of the Debtors, their creditors, and the bankruptcy estates.

37.     The Court's oral Findings of Fact on the record at the Combined Hearing are incorporated herein by reference.

38.     To the extent that any provision designated herein as a Finding of Fact is more properly characterized as a Conclusion of Law, it is adopted as such.

39.     To the extent any objection to Confirmation of the Plan has not been withdrawn, it is overruled.

## CONCLUSIONS OF LAW

A.     This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(L). This matter arises under title 11, and jurisdiction is vested in this Bankruptcy Court to enter a final order by virtue of 28 U.S.C. § 1334(a) and (b), 28 U.S.C. §§ 151, 157(a) and (b)(1), and the

Standing Order of Reference in this District.  These Findings of Fact and Conclusions of Law are being entered pursuant to Bankruptcy Rules 7052, 9014 and 9019.

B.     The Disclosure Statement contains "adequate information" as required by 11 U.S.C. § 1125.

C.     The information contained in the Disclosure Statement and presented at the Combined Hearing, along with the record in these Bankruptcy Cases, was sufficient to enable parties-in-interest and the Bankruptcy Court to make an informed judgment that the Plan is feasible, is fair and equitable, is in the best interest of all parties-in-interest, and should be approved.

### Confirmation Requirements Concerning the Plan

### 11 U.S.C. § 1129(a)(1) and (a)(2):  Compliance with Title 11

D.     The classification of Claims and Equity Interests described in the Plan satisfies the standards of 11 U.S.C. § 1122.  The Plan complies with the applicable provisions of the Bankruptcy Code, including 11 U.S.C. § 1123.  The requirements of 11 U.S.C § 1129(a)(1) are therefore satisfied.  The Debtors have complied with the terms of the Solicitation Procedures Order and the applicable provisions of the Bankruptcy Code.  The requirements of 11 U.S.C §1129(a)(2) are therefore satisfied.

E.     Specifically, the Plan, as required by section 1123 of the Bankruptcy Code:

- designates, subject to section 1122, classes of Claims, other than Claims of a kind specified in section 507(a)(1), 507(a)(2) or 507(a)(8), and classes of Equity Interests;

- specifies every class of Claims or Equity Interests that is not impaired under the Plan;

- specifies the treatment of any class of Claims or Equity Interests that is impaired under the Plan;

- provides the same treatment for each Claim or Equity Interest of a particular class, unless the holder of a particular Claim or Equity Interest agrees to a less favorable treatment of such particular Claim or Equity Interest;

- provides adequate means for the Plan's implementation;

- contains only provisions that are consistent with the interests of creditors and equity security holders and with public policy with respect to the manner of selection of any officer, director, or trustee under the Plan and any successor to such officer, director, or trustee.

F.     The Plan complies with the applicable provisions of title 11, and the Debtor has complied with the applicable provisions of chapter 11, as required by sections 1129(a)(1) and (a)(2) of the Bankruptcy Code.

**11 U.S.C. § 1129(a)(3):  Plan Proposed in Good Faith**

G.     The Plan has been proposed in good faith and not by any means forbidden by law as required by section 1129(a)(3) of the Bankruptcy Code. The Debtors have proposed the Plan with the legitimate and honest purpose of liquidating their assets, winding down any remaining business, and making distributions to Creditors.  The Plan has not been proposed by any means forbidden by law.  The Plan fairly achieves a result consistent with the objectives and purposes of the Bankruptcy Code.  The Plan is the result of good faith, arms-length negotiations among

the Debtors, the Committee, the First Lien Agent, the First Lien Lenders, and other creditor constituencies. The Plan has been proposed in good faith.

**11 U.S.C. § 1129(a)(4): Disclosure and Approval of Payments**

H.       Any payment made or to be made by the Debtors, for services or for costs and expenses in or in connection with the Chapter 11 Cases, or in connection with the Plan and incident to the cases, has been approved by, or is subject to the approval of the Bankruptcy Court as reasonable, as required by section 1129(a)(4) of the Bankruptcy Code.

**11 U.S.C. § 1129(a)(5): Disclosure of Management and Payments to Insiders**

I.       As required by section 1129(a)(5) of the Bankruptcy Code, the Committee has proposed that Dan Lain serve as Plan Trustee. At the Combined Hearing, the Bankruptcy Court ordered that Dan Lain is appointed to serve as Plan Trustee.

J.       As required by section 1129(a)(5) of the Bankruptcy Code, the Committee designated Paul McKim as member of the Plan Trust Oversight Committee (the "Oversight Committee"). The First Lien Agent has designated Zoltan Szoldatits as a member of the Oversight Committee. Since no agreement for the third member of the Oversight Committee was reached between the Committee and the First Lien Agent, the Committee has nominated Bobby Jones of T.A. McKay & Co., Inc. and the First Lien Agent has nominated Albert S. Conly of FTI Consulting, Inc. as the proposed third member of the Oversight Committee. At the Combined Hearing, the Bankruptcy Court ordered that Paul McKim, Zoltan Szoldatits, and Albert Conly shall serve on the Oversight Committee.

K.       Dan Lain's appointment as Plan Trustee and the appointment of the members of the Oversight Committee as ordered herein are consistent with the interests of creditors and with

public policy.  The Plan Trustee will be compensated in accordance with the terms of the Plan and the Liquidating Trust Agreement for the Dune Plan Trust (the "Plan Trust Agreement").

### 11 U.S.C. § 1129(a)(6):  Regulatory Rate Approval

L.    The Plan does not provide for a "rate change" as contemplated by section 1129(a)(6) of the Bankruptcy Code, and therefore, section 1129(a)(6) does not apply to the Plan.

### 11 U.S.C. § 1129(a)(7):  Best Interest of Creditors Test

M.    The Debtors prepared a liquidation analysis with respect to a hypothetical liquidation of the Debtors under chapter 7 of the Bankruptcy Code.  This liquidation analysis is attached as Exhibit 3 to the Disclosure Statement.  The Court accepts the results of the liquidation analysis.  Based on the liquidation analysis, with respect to each impaired Class of Claims or Equity Interests, (a) each holder of a Claim or Equity Interest of such Class has either accepted the Plan or (b) will receive or retain under the Plan on account of such Claim or Equity Interest, property of a value, as of the Effective Date, that is not less than the amount that the holder would so receive or retain if the Debtors were liquidated under chapter 7 of the Bankruptcy Code.  The requirements of 11 U.S.C § 1129(a)(7) are therefore satisfied.

### 11 U.S.C. § 1129(a)(8):  Acceptance of Plan by All Classes

N.    Section 1129(a)(8) of the Bankruptcy Code requires that, with respect to each class of claims or interests, such class has either accepted the plan or is not impaired under the plan.  Except for the Priority Employee Claims in Class 1.1 and the Priority Unsecured Non-Tax Claims in Class 1.2, all Claims and Equity Interests are impaired under the Plan.  As depicted in the Balloting Report, all Classes of Claims and Equity Interests who were entitled to vote on the Plan either voted to accept the Plan or are deemed to have accepted the Plan, and therefore, the requirements of section 1129(a)(8) of the Bankruptcy Code are satisfied. Alternatively, to the

extent the requirements of section 1129(a)(8) of the Bankruptcy Code have not been satisfied, the Plan meets the cramdown requirements of section 1129(b) of the Bankruptcy Code with respect to Classes 5 and 6 which are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  The cramdown requirements of section 1129(b) are satisfied because the Plan does not provide a Distribution to Class 5 Subordinated Claims or Class 6 Equity Interests, and there are no Classes junior to such Classes that are receiving a Distribution or retaining any property under the Plan.

### 11 U.S.C. § 1129(a)(9):  Payment of Priority Claims

O.      Section 1129(a)(9) of the Bankruptcy Code provides for the treatment of claims entitled to priority under sections 507(a)(l)-(8) of the Bankruptcy Code.   Under section 1129(a)(9)(A) of the Bankruptcy Code, holders of section 507(a)(2) and (a)(3) claims must receive cash equal to the allowed amount of such claim.  Section 1129(a)(9)(B) provides that, except to the extent the holder of a claim has otherwise agreed to a different treatment, holders of section 507(a)(1) and (a)(4)-(a)(7) claims must receive deferred cash payments of a value equal to the allowed amount of such claims if the class has accepted the Plan or, if not, cash equal to the allowed amount of such claim.  Under Section 4.1 of the Plan, holders of Allowed Priority Employee Claims (Claims entitled to priority under section 507(a)(4)) shall be paid the amount of its Allowed Priority Employee Claim, plus accrued interest after the Confirmation Date. Under Section 4.2 of the Plan, holders of Allowed Priority Unsecured Non-Tax Claims (Claims entitled to priority in payment under sections 507(a)(1), (6), (7), (9) and (10)) will be paid in full in Cash or by such other agreement reached with the holders of such Claims on the later of (a) the Effective Date or (b) ten days after the Allowance Date. No member of the Class of Allowed Priority Employee Claims or the Class of Allowed Priority Unsecured Non-Tax Claims objected

to this treatment proposed by the Plan. Accordingly, the Plan meets the requirements of sections 1129(a)(9)(A) and 1129(a)(9)(B) of the Bankruptcy Code.

P.    Under section 1129(a)(9)(C) of the Bankruptcy Code, holders of claims under section 507(a)(8) or secured tax claims must receive regular installment payments in cash, (a) of a total value, as of the effective date of the plan, equal to the allowed amount of such claim; (b) over a period ending not later than 5 years after the date of the order for relief under sections 301, 302 or 303; and (iii) in a manner not less favorable than the most favored nonpriority unsecured claim provided for by the Plan. Section 3.5 of the Plan provides for payment of Allowed Priority Unsecured Tax Claims by the Reorganized Debtors' paying the claim either in cash plus accrued interest after the Confirmation Date, or pursuant to an agreement reached with the holder of such claim. The Plan therefore provides that an Allowed Priority Unsecured Tax Claim will be satisfied in one installment equal to the Allowed amount of such Claim, plus accrued interest, and such treatment is not less favorable than the most favored nonpriority unsecured claim provided for by the Plan. Accordingly, the Plan meets the requirements of section 1129(a)(9)(C) of the Bankruptcy Code.

Q.    In addition, the Plan provides for the payment of Allowed Secured Tax Claims in Class 2. The Reorganized Debtors will satisfy the Allowed Secured Tax Claims in Class 2 by (a) transferring the collateral securing the Allowed Secured Tax Claim, (b) payment of Cash, or (c) such other agreement reached with the holder of such Claim. The Plan therefore meets the requirements of section 1129(a)(9)(D) of the Bankruptcy Code.

### 11 U.S.C. § 1129(a)(10): At Least One Impaired Class Has Accepted the Plan

R.    Section 1129(a)(10) of the Bankruptcy Code provides that if one or more classes of claims is impaired under a plan, at least one class must have accepted the plan, without

including any votes of insiders. Class 3.1 is comprised of Allowed First Lien Lender Claims and is impaired under the Plan. Without including any acceptance of the Plan by any insider, Class 3.1 voted to accept the Plan. In addition, Classes 3.2 (Allowed Other Secured Claims), 3.3 (Allowed Second Lien Loan Claims), and 4 (Allowed General Unsecured Claims) are impaired under the Plan and voted to accept the Plan. The Plan therefore satisfies the requirements of section 1129(a)(10) of the Bankruptcy Code.

### 11 U.S.C. § 1129(a)(11): Feasibility

S.     The Plan provides for the orderly liquidation of the Debtors' assets by the Plan Trustee. Section 1129(a)(11) requires that "[c]onfirmation of the plan is not likely to be followed by the liquidation . . . of the debtor . . . unless such liquidation or reorganization is proposed in the plan." The Plan does propose a liquidation, and accordingly, the Plan complies with section 1129(a)(11) of the Bankruptcy Code. All payments that are required under the Bankruptcy Code and the Plan can be feasibly made. Further, none of the payments or actions contemplated in the Plan is dependent on the occurrence of any unlikely contingent event. The structure of the Plan and mechanisms for implementation of the Plan are reasonable and appropriate, and the Debtors are able to pay (or reserve for) all of the payments required to be made on the Effective Date of the Plan.

### 11 U.S.C. § 1129(a)(12): Payment of Fees

T.     The Plan provides for the payment of all fees payable under 28 U.S.C. § 1930 in compliance with section 1129(a)(12) of the Bankruptcy Code.

### 11 U.S.C. § 1129(a)(13): Retiree Benefits

U.     Section 1129(a)(13) of the Bankruptcy Code is not applicable to the Plan as there are no retiree benefits at issue with respect to the Debtors.

**11 U.S.C. § 1129(a)(14):  Domestic Support Obligations**

V.      The Debtors are not required to pay a domestic support obligation, either under a judicial or administrative order or by statute, and therefore 11 U.S.C. § 1129(a)(14) is inapplicable.

**11 U.S.C. § 1129(a)(15):  Objection to Plan Confirmation by a Holder of an Unsecured Claim**

W.      The Debtors are not individuals, and therefore 11 U.S.C. § 1129(a)(15) is inapplicable.

**11 U.S.C. § 1129(a)(16):  Restrictions on Transfers of Property by Nonprofit Entities**

X.      Each of the Debtors and the Plan Trust are a moneyed, business, or commercial corporation or trust, and therefore 11 U.S.C. § 1129(a)(16) is inapplicable

**11 U.S.C. § 1129(d)**

Y.      The primary purpose of the Plan is not avoidance of taxes or avoidance of the requirements of Section 5 of the Securities Act, and there has been no objection filed by any governmental unit asserting such purpose.  Therefore, the Plan complies with 11 U.S.C. § 1129(d).

**11 U.S.C. § 1129(b)**

Z.      Under section 1129(b) of the Bankruptcy Code, the court "shall confirm the plan…if the plan does not discriminate unfairly, and it is fair and equitable, with respect to each class of claims or interest that is impaired under, and has not accepted, the plan." For purposes of section 1129(b) of the Bankruptcy Code, the Plan is fair and equitable to the extent that the holder of any claim or interest that is junior to the claims of such class will not receive or retain under the plan on account of such junior claim or interest any property. See 11 U.S.C. § 1129(b)(2)(B)(ii) and (C)(ii).

AA.     All Classes that were entitled to vote on the Plan either voted in favor of the Plan or are conclusively presumed to have accepted the Plan. If it is determined, however, that Class 5 Subordinated Claims and/or Class 6 Equity Interests did not accept the Plan or are conclusively presumed to have rejected the Plan, the Plan is fair and equitable with respect to the holders of Class 5 Subordinated Claims (if any) and Class 6 Equity Interests because the Plan does not provide a Distribution to parties in those Classes, and there are no Classes junior to such Classes that are receiving a Distribution or retaining any property under the Plan.  Therefore, the Plan meets the cramdown requirements under section 1129(b) of the Bankruptcy Code regarding the treatment of the Class 5 Subordinated Claims (if any) and Class 6 Equity Interests.

**Miscellaneous Provisions**

BB.     The Court's oral Conclusions of Law on the record at the Combined Hearing are incorporated herein by reference.

CC.     The record of the Combined Hearing is closed.

DD.     To the extent that any provision designated herein as a Conclusion of Law is more properly characterized as a Finding of Fact, it is adopted as such.

# # #

**Submitted by:**
Kenric D. Kattner, *Esq*.
HAYNES AND BOONE, LLP
1221 McKinney, Suite 2100
Houston, Texas  77010
Tel: (713) 547-2000
Fax: (713) 236-5687